IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRENDA G. LITTLE                                                                                    PLAINTIFF

VS.                                         CIVIL NO. 04-2188

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                  DEFENDANT

**MEMORANDUM OPINION**

Brenda Little ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act.

**Background:**

The application for DIB now before this court was filed on May 7, 2003, alleging an onset date of August 29, 2001, due to fatigue, dyslexia, edema, asthma, restless leg syndrome, and possible carpal tunnel syndrome. (Tr. 94, 107). An administrative hearing was held on May 20, 2004. (Tr. 23-65). Plaintiff was present and represented by counsel.

On June 15, 2004, the Administrative Law Judge (hereinafter "ALJ"), issued a written opinion finding that, although severe, plaintiff's asthma, thyroid disorder, restless leg syndrome, and possible carpal tunnel syndrome did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 19). After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity (hereinafter "RFC"), to perform medium work, limited only by her ability to occasionally finger. (Tr. 19). As such, he determined that plaintiff could return to her PRW as an inventory control clerk. (Tr. 19).

On July 16, 2004, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties were afforded an opportunity to file appeal briefs, however, plaintiff chose not to do so. (Doc. # 9).

**Evidence Presented:**

At the time of the administrative hearing, plaintiff was forty-eight years old and possessed a ninth grade education. (Tr. 31, 32). The record reflects that she has past relevant work ('PRW") experience as an inventory control clerk and a fry cook in a cafeteria. (Tr. 14).

Plaintiff testified that she had last worked in August 2001. (Tr. 33). She reported problems with restless leg syndrome, tingling in her arms and legs, difficulty reading and writing, and hypothyroidism. (Tr. 38, 41, 42). However, plaintiff indicated that the Synthroid "maintained" her thyroid function levels. She also stated that she had been prescribed Clonazepam for restless leg syndrome, Lexapro for depression, Wellbutrin, and an inhaler for her asthma. (Tr. 44-45).

Plaintiff's best friend, Shauna Hensley, testified that, due to plaintiff's fatigue and depression, she had to make plaintiff get up, take a shower, and eat. (Tr. 51). She stated that she also had to take care of plaintiff's finances, drive her places, read her mail to her, and do the housework for her. (Tr. 53).

The pertinent medical records reveal the following. On May 9, 2000, plaintiff was treated for acute bronchitis. (Tr. 160). Dr. Trevor Hodge prescribed bronchodilator therapy. (Tr. 160). Then, on September 12, 2000, after repeated treatment for abdominal pain, plaintiff had her gall bladder removed. (Tr. 157-158).

On August 13, 2001, Dr. Hodge treated plaintiff for swelling in her leg and general fatigue. (Tr. 154). At that time, plaintiff indicated that she had been working several hours a day and voiced concerns about quitting work. On examination, trace edema was noted in her extremities. Otherwise, plaintiff's physical examination was normal. After diagnosing her with generalized fatigue and decreased libido, Dr. Hodge ordered laboratory tests to further investigate her complaints. (Tr. 154).

On January 22, 2003, progress notes from Dr. Hodge indicate that plaintiff was suffering from a rash, and was worried about going blind from diabetes, although she had not formally been diagnosed with diabetes. (Tr. 152). She reported eating a lot of sweets, as well as numbness in her hands and arms. On examination, Dr. Hodge noted wheezes in the middle field of the left lung and dermatitis on plaintiff's back, arms, and legs. After prescribing Lotrisome, he diagnosed plaintiff with paresthesias in her arms. However, blood work revealed that plaintiff's glucose levels were normal. (Tr. 152).

On February 19, 2003, Dr. Hodge treated plaintiff for a diffuse and puiritic rash. (Tr. 151). She was noted to have extremely dry skin, but refused to see a dermatologist at that time. Therefore, Dr. Hodge directed her to continue her thyroid replacement medication and prescribed Eucerin cream to treat her dry skin. (Tr. 151).

On March 17, 2003, plaintiff was treated by Dr. R. Jeff Wright for an evaluation of her thyroid function levels. (Tr. 146). She complained of decreased libido, cold intolerance, dry skin, and hair loss. (Tr. 146).

On April 14, 2003, plaintiff reported nausea, fatigue, depression, and improved thyroid function. (Tr. 149). On examination, Dr. Hodge noted no abnormalities. However, he did direct her

AO72A
(Rev. 8/82)

to follow-up with him concerning her depression. Dr. Hodge also advised plaintiff to continue taking the Synthroid. (Tr. 149).

On June 16, 2003, Dr. Hodge treated plaintiff for shortness of breath and wheezing. (Tr. 148). She indicated that Lexapro was helping, but continued to report sleeplessness. After diagnosing her with restless leg syndrome, Dr. Hodge advised her to quit somking and continue her metered-dose inhaler treatments. He also prescribed Klonopin. (Tr. 148).

On March 30, 2004, plaintiff reported dizziness, slurred speech, visual disturbances, pain on the left side of her face and head, drowsiness, and headaches. (Tr. 173). A pulse oximetry revealed that plaintiff had an oxygen saturation rate of ninety-six percent on room air. Dr. Hodge diagnosed her with acute bronchitis, headaches, and vertigo. For this, he prescribed bronchodilator therapy. (Tr. 173).

On April 13, 2004, plaintiff returned for a follow-up with Dr. Hodge. (Tr. 172). A physical examination revealed clear lungs and trace edema in her extremities. As such, he diagnosed plaintiff with pain in the knees due to degenerative joint disease, depression, restless leg syndrome, and carpal tunnel syndrome. (Tr. 172).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

AO72A
(Rev. 8/82)

As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education,

5

and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed , "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the entire record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing, as well as the medical evidence contained in the record, are inconsistent with plaintiff's allegations of disability.

First, we note that plaintiff has been fairly active since her alleged onset date. She reported an ability to care for her personal hygiene, do the laundry, wash dishes, change the sheets, iron,

vacuum/sweep, take out the trash, shop for groceries and clothing, go to the bank and Post Office, prepare three meals per week, drive, watch television, visit friends and relatives, and fish. (Tr. 135-136). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

We note that the medical records do contain diagnoses of hypothyroidism, paresthesias in the arms, asthma, restless leg syndrome, carpal tunnel syndrome, occasional acute bronchitis, and depression. (Tr. 152, 169, 172, 173). However, the undersigned is also cognizant of the fact that the record contains no objective test results to indicate the severity or nature of these impairment. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). In fact, the record contains absolutely no objective findings concerning plaintiff's alleged restless leg syndrome and carpal tunnel syndrome. *Id*. Instead, the record merely contains progress notes from plaintiff's physicians reciting plaintiff's complaints. Clearly, this is not sufficient to support plaintiff's disability claim.

We also note that the record does not indicate that plaintiff sought regular treatment for any of her impairments. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue

7

regular medical treatment). In January and February 2003, she was treated for a puiritic rash, however, once the rash subsided, plaintiff sought no further treatment. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). Although she continued to intermittently complain of dry skin and was prescribed a topical cream to treat this condition, records reveal that she refused a referral to a dermatologist. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (holding that claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain).

The record also shows that plaintiff received treatment for her thyroid in March 2003, and by April 2003 was noted to be improved. *See Roth*, 45 F.3d at 282. Further, in March and April 2004, she was treated for edema and acute bronchitis. However, there are no records to indicate further treatment for these conditions. *See Edwards,* 314 F.3d at 967.

A progress note dated September 11, 2003, does reveal that plaintiff was prescribed a trial of Requip to treat her restless leg syndrome. However, following this prescription, there are no records to indicate that plaintiff's condition worsened or that she experienced any side effects from this medication. Likewise, the records do not indicate that this medication was unsuccessful in treating plaintiff's symptoms. Accordingly, we cannot say that plaintiff's condition is totally disabling.

In addition, the record does not contain sufficient objective medical evidence upon which to base a conclusion that plaintiff's mental impairments were severe enough to interfere with her ability to work. While plaintiff contends that she suffers from dyslexia, the record is void of any such diagnosis. In fact, she indicated that she did not suffer from this disorder when she was young, stating that she attended

8

regular classes in school. Plaintiff also reported having worked as an inventory control clerk for several years, with duties to include keeping track of inventory, using a computer, and dealing with paperwork involved in shipping and receiving. As such, we cannot say that her alleged dyslexia has had an impact on her ability to perform work-related activities.

As for her depression, the record does indicate that she has been treated via Lexapro. Further, evidence reveals that this medication was helping her condition. *See Roth*, 45 F.3d at 282. There are no treatment notes to indicate that plaintiff's mental condition ever required her to seek specialized treatment, counseling, or hospitalization. *See Gowel*, 242 F.3d at 796 (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). Therefore, we cannot say that plaintiff's mental condition is disabling.

Thus, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

With regard to the testimony of plaintiff's friend Shauna Hensley, the ALJ properly considered this testimony, but found it unpersuasive. As friends and family members typically have an interest, financial or otherwise, in helping the plaintiff obtain benefits, the credibility of their statements is clearly

9

within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform medium work. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id*.

In the present case, the ALJ considered medical assessments prepared by non-examining agency medical consultant, plaintiff's subjective complaints, and her medical records. On June 18, 2003, a non-examining, consulting physician, completed an RFC assessment of plaintiff. (Tr. 162-171). After reviewing her medical records, the doctor concluded that plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, as well as sit, stand, and walk about six hours in an eight-hour workday. (Tr. 163). No other limitations were noted. (Tr. 164-166). This assessment was affirmed by Dr. Alice Davidson on November 7, 2003. (Tr. 196).

10

While we are cognizant of the RFC assessment completed by Dr. Hodge, indicating that plaintiff could occasionally carry up to five pounds due to carpal tunnel syndrome; sit for a total of four hours during an eight-hour workday; stand and walk for a maximum of two hours; occasionally bend, crawl, reach above her head, and crouch; and never bend, climb, stoop, or kneel, we do not find that this assessment is supported by the overall record. In addition, while he states that x-rays revealing a torn ligament in plaintiff's knee support his opinion, no such evidence is contained in the record. (Tr. 248). In fact, even progress notes from Dr. Hodge's office fail to support his RFC assessment. *See Ward v. Heckler,* 786 F.2d 844, 846-47 (8th Cir. 1986) (per curiam) (holding that a treating physician's conclusory opinions warranted less deference than the "detailed and thorough" reports of two consulting physicians).

The Eighth Circuit has upheld an ALJ's decision to discount or even disregard the opinion of a treating physician [1] where other medical assessments "are supported by better or more thorough medical evidence," *Rogers v. Chater,* 118 F.3d 600, 602 (8th Cir. 1997), or [2] where a treating physician renders inconsistent opinions that undermine the credibility of such opinions, *see Cruze v. Chater,* 85 F.3d 1320, 1324-25 (8th Cir. 1996); *see also Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000). As Dr. Hodge's opinion is clearly not supported by the overall medical evidence of record, we cannot say that the ALJ erred by failing to award it significant weight. *Anderson v. Barnhart*, 344 F.3d 809, 813 (8th Cir. 2003) (holding that ALJ did not err in failing to credit treating physician's opinion because those opinions were inconsistent and not fully supported by medical evidence).

Also of significance is the fact that none of plaintiff's treating physicians have limited her ability to perform physical activities. *See Jones v. Callahan*, 122 F.3d 1148, 1152 (8th Cir. 1997) (holding that a lack of medically ordered restrictions weighs against credibility); *Smith v. Shalala*, 987 F.2d 1371,

11

AO72A
(Rev. 8/82)

1374 (8th Cir. 1993) (same). Aside from Dr. Hodge's aforementioned RFC assessment, none of her treating physicians have commented on plaintiff's ability to perform work-related activities. This, coupled with plaintiff's own reports concerning her ability to participate in a variety of activities, is inconsistent with her allegations of total disability. Therefore, we cannot say that plaintiff's conditions, even when considered in combination, prevent her from performing medium work.

We also find that substantial evidence supports the ALJ's finding that plaintiff could return to her PRW. A vocational expert testified that a person of plaintiff's age, education, and background, who can perform medium work limited by an ability to only occasionally finger, could perform plaintiff's PRW as an inventory control clerk. (Tr. 60-62). The expert indicated that the position of inventory control clerk is classified as light, unskilled work, and does not require an ability to finger. (Tr. 61). Further, the expert also stated that said person could return to plaintiff's PRW, even if she required a position with a sit/stand option. (Tr. 62). *Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992) (holding that vocational expert's response to a hypothetical question provides substantial evidence to support an ALJ's decision, where the hypothetical question sets forth the claimant's impairments with reasonable precision). No evidence has been presented to indicate that the expert's testimony contradicts the information contained in the Dictionary of Occupational Titles. Accordingly, based on the evidence contained in the record, it is clear that plaintiff's combination of impairments does not prevent her from performing all work-related activities.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

12

DATED this the 22nd day of September 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)